Ms. Watson, will you call our next case, please? And will counsel on Suarez approach, please? Yes, please. Please tell us who you are, who you represent. My name is Charles Cohn, and I represent the plaintiff, Miguel Suarez. James Crowley, C-R-A-W-L-E-Y. I represent Aithoff. All right. And, Mr. Cohn, we have read the briefs. We're familiar with your arguments. How much time would you like? How much? I mean, I want to reserve about three minutes for rebuttal. How much is the... Fifteen minutes? Fifteen. That's fine. I'll reserve three minutes of that for rebuttal. We're not real strict on time limits. Mr. Crowley? I was saying that. Okay. All right. Mr. Cohn, whenever you're ready. Yes. Good morning, Justices. May it please the Court and the Counsel. I'm Charles Cohn, again, on behalf of the plaintiff, Miguel Suarez. We're here today, of course, on a statute of limitations issue. The case was decided rather quickly, so we have a rather thin record. Denying or dismissing the case pursuant to Section 216 or 2619A5 of the Code of Civil Procedure, court finding that Mr. Suarez did not file his action against Althoff within the two-year statute of limitations. Let me ask you. You say the light bulb went on. When he saw the Althoff truck, he asked somebody, what does Althoff do here? And they said they're an electrical contractor. Well, what if he saw the truck and he was busy doing something else, or he didn't see the truck until four years after? I mean, is that the truth of the statute? Well, there's obviously a product liability statute reposed that would be applicable. But the question is, when could he have been put on inquiry notice or notice of some kind to start looking into this thing? That somebody else may have been responsible. Yes, somebody else. Now, this case, the main kicker in this case is that this is first and foremost in his mind a workers' compensation injury. What he knew ---- Who filed that case for him? I'm sorry? Who filed that case for him? Another law firm. I don't remember their name, filed his workers' comp case. We later took it over, but we were not the original workers' comp counsel. I don't remember the name of the law firm that he first saw and that filed the workers' comp case. I mean, isn't it common for workers' comp lawyers to make sure that they figure out whether or not there's a third-party action that's available to the injured employee? It is frequently yes, that's true. And I know in our office we often look into if we think there is an issue of a third-party action. But there was nothing, I think, that is in the mind of Mr. Suarez that said bad conduct by some other entity was involved in this thing. And for that matter, even when he came back to work ---- I'm sorry. The only thing he learned at first was the boss told a different worker, after having told Mr. Suarez to dry off the machine, told a different worker, turn on the machine, and the switch was in a different room. Right. So he comes back a year after his accident and learns that one of his co-employees flipped the switch, which was in another room. The employee couldn't see him at the machine. He learns also that OSHA was out to investigate, and he sees that the switch has been moved now so that it's right next to the machine. Actually, I don't know when he saw it. All I know is from his affidavit and from what he told us, that he was told by a different co-worker several months after he came back. He came back, let's see, in July, he came back the following June, and then a different co-worker told him the switch had been moved in October. So this ---- At some point prior to the expiration of the two-year statute of limitations, he learns that the switch has been moved. That is correct. He learned the switch had been moved after he came back to work in June of 2016 and was told the switch had been moved in October. Let me point out one thing. He did not go back to that machine. When he did come back to work, I think they made him a janitor instead, because I don't think with the mangled hand and fingers and missing fingers, he couldn't do whatever it was he did before on the fudge machine, so they made him a janitor instead. So I don't know if he was ---- Again, I'm going back to my initial question. If he didn't go back to the machine to look, but he was told the switch was moved and he knows this is a food service company, it's not an electrical contractor, doesn't a reasonable person say, I wonder who put that switch in the other room and why they moved it after I was injured? Well, assuming that that date that he's told the switch was moved, that event did not occur until after he came back to work in June of 2016, he filed this action in October of 2017. So if the statute starts to run, let's just say he was told the switch was moved the day he came back to work, which isn't so. He learned about it like several months later. That still would have been well short of two years from the date he learned or should have learned about it. Let's just talk about if within the two-year period the plaintiff becomes possessed of knowledge, permitting the reasonable person to say, you know, my injury was wrongfully caused and I've got to investigate this, then you can file within the two years, right? Well, if he knew and he did not know, he filed as quickly, very quickly after he was first put together that there was an electrical contractor involved in this thing and very quickly after he learned that the switch had been moved. That's all I can say is that there was a – and as my understanding, the statute is told until the confluence of those two factors, one, knowledge of injury and two, knowledge of wrongful cause. The fact that there was a cause, well, he knew the machine turned on and when he came back to work he learned that his coworkers had caused the machine to be turned on. And he didn't know anything about the OSHA investigation? The lawyer didn't look into any – No, no. All we know is that there was no – he had no knowledge of any of these facts until after he returned to work a year later. But he hired a lawyer soon after the accident. Yes, he hired a lawyer. So the question is, lawyer being his agent, you're talking about his knowledge. Can any of that knowledge be – he had a lawyer to investigate. Well, he had a lawyer and he filed a workers' comp case. And what was known – Maybe he should have filed a legal malpractice case. I don't necessarily want to go there. I don't know what the lawyer was told. I don't want to go there either, but the point of the matter is that he got injured, he had a serious injury. There was investigation done. There was some kind of a problem with the switching. And everybody sits on their hands and waits to file it until after two years. Well, there was – he didn't know there was a problem with the switching. And I think even – this guy's a layman. He has – even when he was told the switch is in the other room, he didn't know that was a bad thing or a defective thing in and of himself. Oh, and any reasonable person would know that if the switch, the power switch, is in a room where the person turning the machine on can't see whether there's somebody who has their hand in the machine, that's pretty much common sense. That's a problem. I am not willing to go as far as to say that that makes this wrongful or even that he knows that the actor is anybody other than Weber, his employer, who he can't sue and their misconduct is not a wrongful cause as a matter of law. Any misconduct, and he knew of no misconduct of any third party at any time before he returned to work. All he knew was that he got hurt on the job, and when he first came back, he heard of bad acts by Weber employees. And everybody here knows or understands that anything that's attributable to the conduct of the employer or co-employees is not a tortious act as a matter of law. Oh, it's still a tortious act, but there's an exclusive remedy for it outside the justice system. I disagree that it is not a, if it is removed, it's not a tortious act. If it's removed from tort law, which is the way the Workers' Compensation Act has been treated, as cases such as Kelsey have said for many, many times, that the employee gives up his right to file a tort claim in exchange for a certain remedy. So the only thing that has to be cleared and that has to be proved is that he was injured arising out of and in the course of his employment. Who did it? Who was negligent? If anybody was negligent, that is not an inquiry. Therefore, whatever the boss did or the co-worker did, it's not a wrongful act as a matter of law. It is. So his attorney, his original workers' comp attorney, is absolved from asking the question, how did this happen? I can't say he's absolved, but I have to look at the state of mind of my client, Miguel Casuarez, and he didn't know and he didn't communicate because he had no such knowledge to his workers' comp lawyer. All he knew was the machine came on, and even when he went back to work, he heard that bad behavior was his own co-workers. Clients often don't possess the entirety of the knowledge that their lawyers uncover when they investigate. And we don't leave it up – when a client hires the lawyer, they say, go see what I can do about this injury. And we don't then say, well, the client didn't know, and so because the client didn't know, the investigation never started running. Well, let me look at it this way with regard to the lawyer. I don't know that I can impute. When this man goes to his prior counsel and signs up, he signs a workers' compensation contract. The employer-employee relationship in a workers' compensation is also governed by the Act, and you don't sign any kind of general representation. But every single workers' comp lawyer out there in the city of Chicago who signs up a client for a workers' compensation claim knows that he or she has to look into whether or not somebody else might be responsible for it, not the employer, because the damages recoverable by the plaintiff in that circumstance are larger than could ever be expected in the workers' comp case. I handled these cases for almost 30 years. Okay? This is the basics, the absolute basics. And what you're suggesting is that it's okay for the client and the workers' comp lawyer to play dumb until they stumble onto some information when he goes back to work and that that triggers the statute of limitations. Now, the problem is Sort of a wobbly stool that you're standing on. The problem I have, if I were to sue the former counsel for legal malpractice, for not searching, he's going to say, he didn't hire me to do a personal injury case. He hired me to do a workers' comp case. I have no contract. And he's going to waive that workers' compensation 20 percent employee representation agreement and say, I wasn't hired to do this. And so it's going to throw it back into the hands of Mr. Torres. Was the lawyer he originally hired, did he just hold himself out to say, I only do workers' comp. Don't ask me about anything else? Or was he a personal injury lawyer? I don't know for sure what he held himself out as. All I know is that the employment agreement was only under the Act. Yes, Justice Levin is right that historically workers' compensation lawyers, including ourselves, do investigate whether there exist third-party claims. And for that matter, that's where we jumped in in this case. And but whether or not I can impute what the lawyer knew or should have known to Mr. Suarez, I don't think that's fair to Mr. Suarez. But was the case referred to you by the lawyer that he signed up with? No. No, it was not. Definitely not. It was not referred to that to us by that lawyer. And for that matter, I think Mr. Suarez originally came to us, you know, in part to take over his workers' comp case. It was not. We actually, I don't think to this day, I think we have the name in our file of who the former lawyer is. But we are not acquainted with the former lawyer. And there was definitely no referral in between that lawyer and our firm. But it's, as I said, I'm looking at this through the eyes of Mr. Suarez. And for that matter, the case law indicates that whether an injury is wrongfully caused is an issue of fact, normally can be decided by the finder of fact. I think the issues here suggest it's not, especially if we're looking at the state of mind of some guy who, the other lawyer, who isn't even in this picture to us. Yeah, but we only employ a reasonable person standard. We don't do a subjective try and figure out what was in the mind of a particular plaintiff. It's a reasonable person standard. Yeah. Well, the reasonable person is Miguel Suarez, not Miguel Suarez, ex-lawyer. And so I think under this circumstance, this is an issue of fact. What did Mr. Suarez know and when did he know it? And the facts that we know is that Mr. Suarez did not know anything about ALTOF, its conduct, or that it did electrical for this machine until quite shortly before this suit was filed. So I don't think there was anything that should have put Mr. Suarez on notice of the conduct or involvement of ALTOF or any drastically sooner than he did find out about it. He's a layman. And I don't think he's a real educated person. He ran a fudge machine and now he cleans a factory. And the fact that the case was that the injury was sudden and traumatic, which is the main point of the defense, one case Watkins has indicated that that's of no consequence if, in fact, the nature of the injury does not necessarily say that automatically points to a wrongdoer. And this injury, yes, it pointed to a wrongdoer. It pointed to Weber Flavors, a party that you can't sue except to file a worker's comp claim. And its bad behavior or lack of bad behavior is irrelevant to Mr. Suarez's right to recover. So that's why, as we view it, and for that matter, the case, the principal case, the defense relies upon was one called of the fact of wrongdoing causing the injury, but was the fact that parts of the plaintiff's injury manifested themselves later, and the plaintiff attempted to say, oh, I got RSD later, therefore my statute of limitations doesn't run the date of the accident, even though she went to the doctor on the date of the accident. It runs the date that the RSD was discovered. And that's a very different situation than where the identity of any wrongdoer or the existence of behavior of any wrongdoer was completely unknown and not knowable by Miguel Suarez for a long time after he got hurt. And for that matter, why is it not knowable? I don't know where you're coming from. The language that I see in the case is that should he have reasonably discovered that the injury might have been wrongfully caused, not by a coworker, not by his employer, that's what we're talking about. There's nothing that would have put this man, as a reasonable, not particularly educated layman, on notice of bad behavior by a non-Weber party. And that's why we feel that the statute does not begin to run until sometime after he came back to work and was told, suddenly told things about the moving of the switch and about the fact that OSHA came and even the fact that OSHA came is not like a red herring that a third party was bad. It only is a red herring for sure that Weber was bad. Well, it might help somebody reasonably discover whether or not any other entity was possibly to blame that would allow the plaintiff then to have a third party action that would be something where he'd get full compensation as opposed to the compensation you get in a worker's comp case. But again, we're looking, in my mind, to the mind of Miguel Suarez. You're saying that's reasonable for him to do that, and I guess we're trying to question whether or not a reasonable person might have, you know, asked a couple of questions. How did this happen? He did. And he was told, Mr. Serrano told Mr. Serna to turn on the machine. That's what he first learned of how this has happened. He did want to know how did this happen, and that's what he learned. And only later did, and for that matter, as his affidavit indicated, he was told by coworkers, don't talk to him. Don't talk to Suarez. Or you'll get in trouble. That's what he heard from coworkers after he came back. The lawyer was trying to, I guess, not try to downplay this so that Suarez, although all I know is that's what he was told by coworkers, as indicated in the affidavit we filed in the response. So in the mind of a man like Mr. Suarez, he had no knowledge of a third-party actor or of bad conduct by a third-party actor, not just at the very least until he came back to work. So why does seeing an Althoff truck all of a sudden slip the screen in his face? He asked questions when he saw it. Who are they? So you say he didn't have to ask questions. He didn't have to investigate. For all he knew, this was just an employment-related injury. So he sees a delivery truck, some delivery truck on the premises and says, who's that? I think there must have been more to it than that, because I don't think it was looking like a delivery truck. I'm sure it said Althoff, but it may have had some words indicating they were an electrical contractor. At this point, yeah, he says he's a reasonable man. When he comes into knowledge, he acts on it, and that's exactly what happened at that point in time. He came into some knowledge, asked some questions, and learned things he didn't know before. What you're talking about, though, is him seeing a particular entity where months before he knew or should have known that the switch was in another room, and after his accident, it was moved to right next to the machine. Yeah, well, that's something that he first learned about roughly one year before the date he filed suit. And it's my understanding of the law that that's when the statute begins to run, is that day that he might If that's the date, then the statute begins to run then, and he should have two years. If that's what should, and I think that's a question of fact, when would a reasonable man in Mr. Suarez's position have known? And that is what triggering fact after he got back to work. I think the law is, and I could be wrong about this, if within the statute of limitations, the plaintiff discovers both the injury and that it was wrongfully caused, whenever it occurs within that two-year period, you've got to file. You don't get the date of discovery doesn't extend your limitations period. I think we see those cases all the time. Because they created for this kind of case a statute of repose. So there's an outer limit. And it was well within the statute of repose when this suit was filed, well within it. And I think his behavior was reasonable. He did not, he was not put on notice of any third-party wrongdoer such that he had to file a suit more promptly than he did. Because he didn't ask, or his lawyer didn't ask. I mean, how can you sit on your hands and do nothing and say, oh, I didn't know that anybody else could have been involved? I mean, that just doesn't make any sense to me. Because he did ask. And he did ask very quickly after he came back. And he learned the story of how the machine came on. But that did not trigger in his mind, as a not particularly educated man, that there was other wrongdoers other than Weber Flavors. And Weber Flavors, as Augusta said, can't be a wrongdoer as is usually recognized. Because they're absolved from any remedy except under the Workers' Compensation Act. And so that's essentially the situation. You've got to look in the mind of Miguel Suarez not, and I don't think it's fair to look into the mind of Miguel Suarez. But look in the mind of his lawyer, notwithstanding what his lawyer maybe could have or should have done. Because, as I said, Mr. Suarez signed a contract with the former counsel to do a workers' compensation case. And that guy is going to come back if I were to sue him in ways that workers' compensation representation agreement in our face. He didn't hire me to do a third-party action. He hired me to do workers' comp. And I did workers' comp. And so it's not that easy to say to him, yes, I respect what Justice Levin is saying because we're in the same boat and we do the same thing that lawyers typically, workers' comp lawyers, do often investigate for third-party actions. But I think it's not fair to Miguel Suarez to impose whatever the former lawyer could have or should have done on Miguel Suarez. I don't, that's my. I think the law is that once sufficient information becomes available, the burden is on the injured person to inquire further as to the existence of a cause of action. That's the Witherall v. Weimer case, which is sort of, you know. When did that information come into his possession? That's a question of fact. And that's why I think it was premature to dismiss this case at this point in time. Because that's normally when. It wasn't available? He couldn't find this information out? To a reasonable person? I don't know that he could have. It's when did it come into his possession as a reasonable person and not as a guy who's knowledgeable in. I just don't understand how a lawyer and a client can sit around for a year and not try to figure out why the heck this happened, okay? And to see whether or not there's a cause of action for where he could get money for pain and suffering for disability, things like that, that you can't get in a comp case. I know that that's true, but the fact that his lawyer didn't do these things should not be imposed on Mr. Suarez, who is sitting home recovering. And believed that it was only the bad conduct of Weber or that something had happened to Weber and had no knowledge of any third-party wrongdoer during the 11 months he was at home recovering from his injury. He was even referred to and had psychological counseling with a badly mangled hand. He couldn't go back and do what he did. And when he did come back, he was made a janitor and only then started to ask questions. And when he asked those questions, he at first only learned of conduct by Weber people. He did ask questions. He did behave as a reasonable person. And the fact that there was a third-party wrongdoer was very slow in coming to him and partially can be blamed on Weber because they didn't want to talk to him. That's basically the facts here. Thank you. All right. Mr. Crawley. Good morning. Counsel, may it please the Court, Your Honor, James Crawley for Elthoff. This was a catastrophic injury by any measure. We have amputation of fingers. We have a mangled hand. It is not a sprain. It's not a delayed injury. It's not an occupational illness where it's exposure and somebody develops asbestosis five years down the road. They don't contest that. He doesn't contest that. You're absolutely right, Judge. That's not the only question, is it? Are you suggesting that that's the only question? Which is what? Are we only to determine whether or not it's a sudden and traumatic event and then, you know, automatically the statute starts running? Yes. The Court says as a matter of law that when it is a sudden and traumatic event, the law presumes that the party is on notice from that point forward. Well, they're on notice of the nature of the injury. Are they on notice that it was wrongfully caused by somebody other than the employer? Wrongfully caused by definition of the Supreme Court does not have to identify who the wrongful party was. And in the Knox case, which is cited in the briefs, wrongfully caused refers to the point at which the injured party acquires sufficient information regarding the injury and its cause to be put on notice. That further inquiry is necessary to determine whether a cause of action exists. So when do you say that Mr. Suarez was possessed of sufficient knowledge to explore a third party action? The day that his hand was. Why would that be? The definition you just read did not say anything about third parties or defendant. Did it? The more severe the injury the courts have held, the greater the party is on notice. Of what? To investigate the seriousness of the injury. The seriousness of the injury. Does wrongfully caused mean that the plaintiff must have knowledge of a specific defendant's negligent conduct? No, not a specific defendant. Okay, so why aren't we talking here about a specific defendant? No, because what counsel admits in their brief, and they say it several times, is if we could have sued Weber, we would have. They acknowledge in their own brief that they know that this was wrongfully caused. By Weber. And that's all that the State, that the law requires. No, but that's not, that would, then it wouldn't, you wouldn't have the concept of sufficient information causing the injury and who it was. That would just heat up the rule. I mean, it wouldn't be necessary to go any further in any case. Than what? Than a catastrophic injury. That's what you're saying. Correct, this is a catastrophic. And I don't see that as being the law. Let me explain. It's a catastrophic injury. Mr. Suarez was immediately put on notice. These machines don't start on their own. No, a man who worked for Weber pushed, made the switch. How does Mr. Suarez know that? He knew that. He knew it was an employee. Well, how do you know that they didn't know that? Because that's what's in their affidavit. That's what they stated here two minutes ago. When you're a plaintiff's personal injury lawyer, and I did this for 29 years before I did defense work, you get a case of this magnitude, a workers' comp case, you have an absolute duty to investigate whether there's a third party involved. And when I looked at the workers' comp petition in this case, it's signed by counsel. The law firm on that petition is Cohen & Cohen, not another law firm. The law says that when it is a sudden and traumatic event, you don't even get to the discovery rule in this case. If I walk out of my office and I slip on the floor, and I think that I slipped on my employer's floor in this case, and therefore don't bring an action against him for two years, but in year three, I find out that the floor that I slipped on was actually maintained by the building, I don't have a cause of action against the building because I didn't do my due diligence to find out who owned that property. Mr. Suarez didn't know who flipped that switch, whether it was an independent contractor, whether the machine itself malfunctioned. That's not the issue. It's not the issue of who flipped the switch, but we know that it's an employee and he has no action against Weber. So what you're talking about is really a red herring. That's not what's at issue here.  The issue is an unknown third party put the switch in. And that was a cause of action that was brought against your client. So you're saying that an injured plaintiff can sit for 27 months and not investigate to determine who put the switch in? No, the question is when he knew or should have known about the third party, which is a question of fact. That's not what the law says. Oh, no? No, the law does not say about a third party. No, it doesn't say third party. It says when he knew or should have known that it was wrongfully caused. Wrongfully caused can be caused by your own employer. Just because it's caused by your own employer doesn't take it out of the realm of being wrongfully caused. And the employer could have been named as a third party in contribution. I disagree with the fact that Weber is not a tortfeasor if they contributed to this action. If they named Elthoff and Elthoff could third party them in, they could be a tortfeasor in this action. You don't sit back and pretend that there's no cause of action. There's an absolute duty, and if we allow every plaintiff's personal injury lawyer in this state to wait to determine, have information handed to them that some other third party was responsible for this action, we'd be filing lawsuits four, five, six years later. Well, but there's still a question of fact when they knew or should have known that an injury was wrongfully caused. It's still an issue of fact, right? It's still not a question of fact? It's not a question of fact when it is a sudden and traumatic event. When there's only one determination that the court can make, whether it was a sudden traumatic event, it's a question of law for the court to decide. And so is there a case that says that we don't go beyond that? Yes. And you read that case as being? Withdrawal is one. Gala is another. Barry is another. Justice Lavin has himself written this and other opinions in this case, in this court. It is a well-regarded issue that the Supreme Court has ruled on time and time again, that a sudden traumatic event, you don't even get to the inquiry of the discovery rule. That stops the analysis right there. If it's a sudden and traumatic event that everybody agrees upon and plaintiff agrees upon it in the first paragraph of their brief, they acknowledge this is a sudden and traumatic event. We don't disregard that, disagree with that. Under that acknowledgement, the case stops there. The statute of limitations begins to run on the day of the accident. That is what the law is. Are there any other questions you'd like me to address? I do have one final issue, I apologize. In their brief, the plaintiff talks about Supreme Court Rule 224 and whether they had the ability to do discovery to determine who was the wrongful party. And in their brief, they talk that 224 is not available to them because they didn't have good faith basis to file a petition under 224. And that they couldn't do it against the employer. When you read the comments of Rule 224, it specifically talks about that the rule is of particular benefit in industrial accidents where the parties responsible may be the plaintiff's employer who immunizes himself by the workers' compact. So 224 is there under the comments of the Supreme Court. Did you cite this in your brief? No, in your brief. We talk about Rule 224, yes. But the comments themselves address the issue of it being a particular benefit for plaintiffs who are injured at work when the employer has the immunization of the Workers' Compensation Act. Thank you. All right. Thank you, Mr. Crowley. Mr. Cohn, briefly. Just to clarify, to start, one point that Justice Hyman brought up, which is that I don't believe Mr. Suarez was aware of the behavior of the boss and co-worker is that he got hurt at work. It's not just what he knows. It's what he knew or should have known. And the machine shouldn't have turned on by itself. That would be a logical difference. That is true. And I was thinking about what Justice Lavins said about what a reasonable workers' comp lawyer normally investigates to determine whether there's a third party cause of action. That is 100% correct, but it is does not that first of all, I don't know that there's any law that says that when you hire a lawyer for workers' comp that he automatically has a duty to investigate for third party claims. And I don't think it's even implied in any manner in the attorney-client agreement that has to be filed with every workers' comp agency. Are you trying to suggest that it's not the custom and practice of the worker comp community, injured parties' lawyers, to investigate the possibility of a more financially lucrative, beneficial cause of action for their client? That is 100% true. But whether or not it's that custom and practice can be imposed as putting knowledge in Mr. Suarez's head, that's a completely different thing. And I don't even know, for that matter, whether that custom and practice makes that lawyer duty-bound as a matter of law to do that. Yes, I 100% agree with Justice Lavin on that point, that it is the custom and practice because we do it ourselves. I don't think it would be very hard to get an expert in a case like that. I don't know if there's any. I used to act as an expert. I mean, it would be pretty easy to find one. What I'm wondering is I don't know if there's any case law, though, that says that a custom and practice rises to the level of being a legal duty. I'm not going to do your research for you. No. That's just my perception here on this point. But one point I want to really respond to on there is the sudden and traumatic event. And counsel insists that the sudden and traumatic event puts him on notice immediately that it was wrongfully caused. That it's not so. And one of the cases we cited, which was the Clark versus Galen Hospital case that we cited in our briefs, for that matter, makes it perfectly clear. The facts of that case were, I believe, a leg amputation, a leg off. What else could be a more sudden and traumatic event than having your leg go away? But that was deemed because of the circumstances here. It was not clear to the plaintiff that there was any negligent conduct causing in the way of medical malpractice caused the leg to go. He was a long-time diabetic. And so he thought it was his underlying condition that caused the loss of the  And it was later, and the court respected that, that medical malpractice was involved in the loss of the leg. So even on a sudden traumatic event, if the circumstances do not cry out, third-party wrongdoer, the second element, the wrongful causation has not been satisfied and the statute does not begin to run. And that is the same thing here. The only wrongdoer that was known to the mind of Miguel Suarez was the conduct of persons employed by Weber. Third-party wrongdoer was not known to him. And when it was known to him, I believe, remains a question of fact for the trial court and perhaps for the finder of fact to determine. Thank you. All right. Thank you both for your arguments. We will take the matter under advisement and stand in recess.